UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS DAVIDSON, an Individual, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> PATRICIA SCHNEIDER, an Individual; ) <br> CONDITIONED OCULAR ENHANCEMENT, INC., ) <br> an Illinois Corporation; DRIVE PERFORMANCE ) <br> CORP., an Illinois Corporation, formerly FASTTRACK ) <br> BASEBALL CORP., INC., NATIONAL BASEBALL ) <br> AND SOFTBALL ACADEMY, INC., d/b/a ITRAC ) <br> VISION TRAINING; and DRIVE PERFORMANCE ) <br> LLC, an Illinois Limited Liability Company, ) <br> ) <br> Defendants. ) | CASE NO.: 10 CV 2101 <br><br> Hon. Judge Joan H. Lefkow |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

NOW COME the Defendants, PATRICIA SCHNEIDER, an Individual; CONDITIONED OCULAR ENHANCEMENT, INC., an Illinois Corporation; DRIVE PERFORMANCE CORP., an Illinois Corporation, formerly FASTTRACK BASEBALL CORP. INC.; NATIONAL BASEBALL AND SOFTBALL ACADEMY, INC. d/b/a ITRAC VISION TRAINING; and DRIVE PERFORMANCE WHEELING, LLC, an Illinois Limited Liability Company (hereinafter "Defendants") by and through their attorneys, CHUCK BRETZ & ASSOCIATES, P.C., and for their Reply Brief in Support of their Motion for Summary Judgment submit the following:

**INTRODUCTION**

In Plaintiff's memorandum in support of his cross-motion for summary judgment, Plaintiff argues theories of liability (defamation and commercial disparagement) which he clearly has not pled. Now, in his response to Defendants' Motion for Summary

Judgment, he forgoes defamation and commercial disparagement and instead argues that the Defendants have violated provisions of Section 43(a) of the Lanham Act (15 U.S.C. 1125(a); again, a theory of liability not pled. Plaintiff ignores the fact that his Fourth Amended Complaint alleges two (2) entirely different causes of action; breach of settlement agreement and tortious interference with prospective economic advantage. Having had to respond to Plaintiff's cross-motion for summary judgment and now, reply to his Response to Defendants' Motion for Summary Judgment, Defendants note that one thing is abundantly clear. Plaintiff's continuous changing of theories of liability is either an incredible display of naiveté as to the merits of his claim or is a deliberate attempt to confuse the issues to such an extent that he hopes both motions will cancel each other out. What is equally clear is that the Plaintiff cannot sustain the necessary elements essential to the causes of action he has actually pled and that based on the uncontested and uncontroverted material facts of this cause, judgment, as a matter of law, should be entered in favor of the Defendants.

## ARGUMENT

To iterate, the Defendants' alleged conduct complained of by the Plaintiff took place during two single and isolated telephone conversations between Eric Maleski and Michelle Thiry and Eric Maleski and Michael Hill. Despite Plaintiff's attempts to characterize Hill and Thiry as customers or potential customers, the uncontroverted facts indicate the opposite. Thiry does not have any business relationship with the Plaintiff and her relationship with the Plaintiff is purely a social one. (Defendants Statement of Material Facts "SMF", pg. 9, ¶59, 60). Thiry contacted Maleski initially to inquire as to iTrac's techniques and its activities in the area of vision training. (Plaintiff's Response

2

Brief at pg. 7). As for Hill, while he and the Plaintiff had considered the possibility of a partnership, Hill was not a customer of the Plaintiff. (SMF, pgs. 5, 6 ¶ 31, 32).When Hill contacted Maleski, it was with the idea of potentially franchising vision training. (SMF, pg. 6, 7 ¶ 41, 42, 43). In his response brief, Plaintiff now attempts to fit Maleski's statements to Thiry and Hill within the ambit of Section 43(a) of the Lanham Act; an attempt that is irrelevant and without merit vis-à-vis the issues in this cause.

It is uncontested that the instant cause stems from an alleged breach of the Settlement Argument that resolved *Conditioned Ocular Enhancement v. Bonaventura, et al.*, No. 05-cv-0215. ("*COE*"). In *COE*, Plaintiff, previously a defendant in *COE*, filed a counter-claim in which one count was based on allegations that Plaintiff/Counter-Defendant, Conditioned Ocular Enhancement, made false and misleading statements to Plaintiff's current and prospective customers in violation of Section 43(a) of the Lanham Act. In dismissing said count, the district court in *COE* stated "Plaintiff failed to properly plead said claim because the "Letters do not constitute 'commercial advertising or promotion'." The court further stated that to be actionable the alleged false claims must have arisen in the context of "commercial advertising or promotion". *Conditioned Ocular Enhancement v. Bonaventura,* et al., 458 F. Supp. 2d 704, 710 (N.D. Ill. 2006). *See also*, *American Needle and Novelty, Inc. v. Drew Pearson Marketing, Inc.*, 820 F. Supp. 1072, 1078 (N.D. Ill. 1993). The *COE* District Court, noting the Seventh Circuit decision in *ISI International Inc. v. Borden Ladner Gervais, LLP,* 316 F. 3d 731 (7th Cir. 2003), stated that "Seventh Circuit law is clear: consumer letters do not constitute false or misleading commercial advertising or promotion". *Conditioned Ocular Enhancement v. Bonaventura, et al.,* 458 F. Supp. at 710. Even under general principles, Section 43(a) of

the Lanham Act "does not have boundless application as a remedy for unfair trade practices." *Dastar Corporation v. Twentieth Century Fox Film Corporation, et al.*, 539 U.S. 23, 29, 123 S.Ct. 2041, 2045 (2003).

In the instant cause, the facts are even narrower than those in *COE* or *American Needle and Novelty, Inc,*. Here, rather than letters being mailed to customers or potential customers, the complained of conduct allegedly occurred during two private individual telephone conversations with Thiry and Hill who simply cannot be described as customers or potential customers. It is clear that Plaintiff's argument that Defendants violated Section 43(a) of the Lanham Act is irrelevant , does not apply to this cause and should be disregarded by this Court in its analysis of the applicable law.

While Plaintiff's argument in opposition to Defendants' Motion for Summary Judgment largely rests with the Defendants' alleged violations of Section 43(a) of the Lanham Act, it is interspersed with references to Count I that he actually pled in his Fourth Amended Complaint; Breach of Settlement Agreement. For example, at pg. 5 of his Response Brief, Plaintiff argues that "as a result of Defendants' intentional disparagement and defamation of Davidson and his vision training business which materially breaches the Settlement Agreement, Davidson's business reputation and his business have been damaged to an extent to be proven and are irreparably damaged". Plaintiff then proceeds to cite various portions of Thiry's and Hill's depositions to illustrate the alleged "unprovoked and vicious verbal attacks" (Plaintiff's Response Brief at pg.7) visited upon the Plaintiff during those two (2) isolated telephone conversations and the damages that he sustained as a result. Plaintiff's interpretation of the uncontroverted facts of this cause and his extrapolation of the deposition testimony of

4

Thiry and Hill is, to say the least, amusing and one-sided; particularly with respect to the, no doubt calculated, omission of certain portions of said deposition testimony.

By way of illustration, the Defendants do not contest that a number of the comments allegedly made by Eric Maleski to Michelle Thiry during their telephone conversation were negative in nature, e.g. Davidson's activities vis-à-vis ocular training "don't make sense", "do not work for vision training" and his logos are "scary looking". What Plaintiff omits is that none of the comments made during that single conversation caused Thiry to think any less of the Plaintiff or his vision training. (SMF, pg. 9, ¶ 65). Moreover, Thiry did not mention these comments to anyone other than the Plaintiff and his counsel. (SMF, pg. 9, ¶ 65). In short, Maleski's comments ended with Thiry. They were not disseminated to any potential customer base as Plaintiff alleges. As to Thiry being a customer herself, Plaintiff argues that while she is currently on Nikes' sales staff, she was a director of softball operations at Arizona State University, and worked with student athletes at ASU. (Plaintiff's Response Brief at p. 11). According to the Plaintiff, Thiry has been exposed to and worked with very well known organizations engaged in vision training and therefore is undoubtedly a potential customer of the Plaintiff and also a good will ambassador for the Plaintiff in the interstate marketplace amongst many potential customers. (Plaintiff's Response Brief at pg. 11). Plaintiff merely pays lip service to the fact that, at present, Thiry is a sales representative for Nike, a company synonymous with sports shoes and clothing; not vision training. Moreover, by her own testimony, Thiry described her relationship with the Plaintiff as a social one. (SMF, pg.9, ¶ 59). Thiry simply cannot be defined as a customer or potential customer.

5

Plaintiff's interpretation of Hill's deposition testimony is skewed as well. He references Eric Maleski "systematically over at least a ten minute period" warning Hill "not to do business with the Plaintiff for fear of a lawsuit, and to not engage in any franchise operations with the Plaintiff, again for fear of a lawsuit, as only 'they', the Defendants, are authorized to engage in franchise operations involving any kind of vision training." (Plaintiff's Response Brief at pg. 10). Plaintiff quotes Hill stating that Maleski's comments were "good enough for him" and then argues that Maleski's warnings affected Hill's business relationship with Plaintiff and Hill's prior intentions of doing business with Plaintiff (Plaintiff Response Brief at pg. 9). What Plaintiff omits is Hill's testimony clearly stating that Maleski's comments did not cause Hill to think any less of the Plaintiff and, more to the point, did not affect any business relationship with the Plaintiff. (SMF, pg. 8, ¶ 51).

In short, Plaintiff's Response Brief does not refute Defendants' position that the comments made by Maleski to Thiry and Hill do not rise to the level of being disparaging as a matter of law.

Plaintiff chides the Defendants for citing authorities whose facts are inapposite to the facts in the case at bar and for misplaced reliance on authorities in light of Plaintiff's authorities implicating Section 42(a) liability in deterrence of bad faith assertions/allegations of patent infringement (Plaintiff Response Brief at pg.13). In reply, Defendants first address the latter assertion and draw this Courts attention to their reply regarding Plaintiff's argument of liability under the Lanham Act. Based on the uncontested facts of this cause, it is the Plaintiff whose reliance on the authorities cited is misplaced. As already noted, Plaintiffs arguments that Maleski's comments somehow

6

place this cause within the ambit of the Lanham Act is without merit since the comments were not made in a commercial advertising or promotional setting and certainly not to any actual or potential customers. As to citing factually inapposite authorities, Defendants would point out that given the particular (and some might say peculiar) set of facts in the case at the bar, there is a dearth of case law which could be considered on point factually with this cause. Accordingly, Defendants cited *Haisma v. Edgar*, 218 Ill. App.3d 78, 578 N.E. 2d 163 (1st Dist. 1991) for the proposition that since a settlement agreement, as here, is a contract, the construction and enforcement of the settlement agreement is governed by principles of contract law. *Haisma v. Edgar*, 218 Ill. App. 3d at 87. Moreover, *Haisma* was particularly cited for the proposition that to prevail on a breach of settlement agreement claim, Plaintiff must prove the required elements, including damages, which Plaintiff has decidedly failed to do.

Defendants rely on the 7th Circuit's decision in *Rain v. Rolls-Royce Corporation,* 626 F.3d 372, 379-380 (7th Cir. 2010) for its definition and discussion of the term "disparage". In *Rain*, plaintiffs filed a breach of contract suit alleging that the defendants breached a "non-disparagement" provision of a settlement agreement. *Id.* at 376. The court concluded that the Indiana Supreme Court would rely on dictionary definitions to find the term "disparage," as it was used in the settlement argument. *Id.* at 380. Again, given the dearth of cases on point vis-à-vis the case at bar, Defendants cited *Rain* for its discussion regarding the definition of "disparage". The passage cited by Plaintiff was the *Rain* court's response to the appellants requesting the *Rain* court to certify a question, i.e. the proper definition of disparagement to the Indiana Supreme Court. The *Rain* court refused to do so. *Id.* at 382.

7

Plaintiff's argument that Defendant's reliance on *IOS Capital v. Phoenix Printing, Inc.*, 348 Ill. App. 3d 366, 808 N.E. 2d 606 (4th Dist. 2004) is inapplicable to the facts of this cause is particularly without merit.

It is uncontested that Defendant, Patricia Schneider, signed the settlement agreement in question of behalf of Conditioned Ocular Enhancement. It is further uncontested that Ms. Schneider is either an officer or general manager of the named corporate defendants. Having filed this particular lawsuit, Plaintiff cannot deny that he named Patricia Schneider as an *individual* defendant and not as an officer, manager, or agent of the corporate defendants. Further, making the assumption *arguendo* (*See*, Defendant's Memorandum of Law in Support of their Motion for Summary Judgment at pg. 9) that Ms. Schneider has also been named in her officer or general manager capacity as a Defendant, the general principle and rule of law in Illinois is that corporate officers are "generally not liable for corporate obligations." *IOS Capital v. Phoenix Printing, Inc.*, 348 Ill.App.3d at 371. Defendants do acknowledge that the law views torts differently. "[T]he court recognized the need to protect corporate officers from individual contractual liability. However, it distinguished situations involving breach of contract from those involving torts... A corporate officer who participates in a tort by the corporation may be liable in any one of a number of tort categories including intentional interference with a contract and conversion." *Id.* at 371 citing *National Acceptance Co. of America v. Pintura Corp.*, 94 Ill. App 3d 703, 706; 50 Ill. Dec. 120, 418 N.E. 2d 1114, 1116-17 (1981). In the case at bar, there is absolutely no evidence, either testimonial or documentary, that Patricia Schneider, either as an individual or even in her capacity as officer or general manager of the named corporate defendants, said anything or did

8

anything to disparage the Plaintiff or his business. In short, based on the facts adduced in this cause, Defendant, Patricia Schneider, simply cannot be held individually accountable as a matter of law.

Lastly, in his Response Brief, Plaintiff argues that he can sustain his burden of proof as to each element of his claim in Count II for tortious interference with his prospective economic advantage. He posits that the Defendants falsely state that Plaintiff has not marketed himself. This position completely ignores Plaintiff's own sworn deposition testimony. For example, in answer to the question "other than word of mouth, sir--which I'm not saying there's anything wrong with that --but other than word of mouth, have you done anything else to market your Vision Training services after the 2008/2009 agreement was reached?" the Plaintiff responded "No. The only marketing that I did is through the testimonials that I had with the customers that I have" (Ex. 1 to SMF, p. 95, lines 14-22). Plaintiff's maintenance of his home training facility, intention to work with the Seattle Mariners in the future and engaging in the potential licensing of his own vision training patent is not conduct that would engender an expectation of entering into any valid business relationships. More importantly, Plaintiff himself has testified that he does not have any personal knowledge of and cannot point to any circumstances where anything that Defendant, Schneider, or someone affiliated with the corporate defendants have done or said cost him any business opportunities. (SMF, p.5, ¶ 27-29). In short, contrary to Plaintiff's contentions, he cannot sustain his burden of proof with respect to Court II of his Fourth Amended complaint either.

## CONCLUSION

Based on the foregoing discussion, Plaintiff's Response to Defendants' Motion for Summary Judgment does not offer anything of substance nor any contested material facts to warrant the denial of Defendants' Motion. Therefore, Defendant Patricia Schneider, an individual and the Corporate Defendants respectfully submit that based on the uncontested and uncontroverted facts of the case at bar, they, and each of them, are entitled to judgment in their favor as a matter of law.

Respectfully submitted,

By: _____
Joseph A. Namikas, one of the
Attorneys for Defendants

Joseph A. Namikas
Chuck Bretz & Associates, P.C.
58 N. Chicago Street, 2nd Floor
Joliet, Illinois 60432
(815) 740-1545
ARDC #: 6190095