# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS DAVIDSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 10 C 2101 |
| | ) | |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| PATRICIA SCHNEIDER; | ) | |
| CONDITIONED OCULAR | ) | |
| ENHANCEMENT, INC.; DRIVE | ) | |
| PERFORMANCE CORP.; FASTTRACK | ) | |
| BASEBALL CORP., INC.; NATIONAL | ) | |
| BASEBALL AND SOFTBALL | ) | |
| ACADEMY, INC.; and DRIVE | ) | |
| PERFORMANCE WHEELING, LLC | ) | |
| d/b/a ITRAC VISION TRAINING, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Thomas Davidson filed suit against defendants Patricia Schneider, Conditioned Ocular Enhancement, Inc. ("COE"), Drive Performance Corp., and Drive Performance Wheeling, LLC (collectively, "defendants") for breach of a settlement agreement among Davidson, Schneider, and COE and tortious interference with prospective economic advantage.[1] Before the court are the parties' cross-motions for summary judgment. For the reasons set forth below, summary judgment is granted in favor of defendants on all counts.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

---

[1] Davidson is a citizen of Washington, defendants are citizens of Illinois, and the amount in controversy exceeds $75,000. The court thus has jurisdiction pursuant to 28 U.S.C. § 1332(a).

56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). When considering cross-motions for summary judgment, the court must be careful to draw reasonable inferences in the correct direction. *See, e.g., Int'l Bhd. of Elec. Workers, Local 176* v. *Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011).

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on pleadings alone but must designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323-24.

# BACKGROUND[2]

## I.     Prior Litigation and Settlement Agreement

Thomas Davidson is the owner of High Tech Vision Training, which provides ocular vision training to baseball and softball players. (Dkt. 110 at ¶ 1.) Patricia Schneider is the president of COE and Drive Performance Corp., and the sole manager of Drive Performance Wheeling, LLC (d/b/a iTrac Vision Training) (collectively, "the Schneider entities"). (*Id*. at ¶¶ 6-7.)

Davidson and COE were previously engaged in litigation about the alleged infringement of a vision training patent and related matters in this district. *See Conditioned Ocular Enhancement, Inc.* v. *Bonaventura, et al.*, No. 05 C 2153 (N.D. Ill., filed Apr. 12, 2005). On March 6, 2008, COE and Schneider, on the one hand, and Davidson, on the other hand, entered into a confidential settlement and release agreement to resolve the litigation ("the settlement agreement"). (*Id*. at ¶ 11.) Under the settlement agreement, COE, the owner of U.S. Patent No. 6,447,408 for an ocular enhancement training system ("the '408 patent") granted Davidson a "non-exclusive and non-transferable royalty free license under the '408 patent without the right to sublicense for the life of the '408 patent." (Dkt. 98, Ex 4 ("Settlement Agt.") at ¶ 2.) As a condition of the settlement agreement, the parties agreed not to

> directly or indirectly, individually or in concert with others, engage in any conduct or make any statement calculated or likely to have the effect of undermining, disparaging or otherwise reflecting poorly upon the other party or their good will, products, services, or business opportunities, or in any manner detrimental to the other party, their successors and assigns, and affiliated entities, their

---

[2] The facts set forth in this section are derived from the statements of fact submitted by the parties to the extent they comport with Local Rule 56.1. They are taken in the light most favorable to the non-movant. In accordance with its regular practice, the court has considered the parties' objections to the statements of fact and included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to the resolution of these motions.

shareholders, officers, directors, or employees, past, present and future.

(Settlement Agt. at ¶ 8.)

## II.     The Maleski Conversations

Eric Maleski was an employee of one of the Schneider entities in October and November 2008.[3] (Dkt. 110 at ¶ 15.) On October 12, 2008, Michelle Thiry, the director of softball operations for Arizona State University (dkt. 98, Ex. 3 ("Thiry Dep.") at 9:18-25) and a former student of Davidson's, emailed Maleski to ask about a vision training system that she had seen at a professional baseball game. (Dkt. 110 at ¶ 14; Thiry Dep. at 75:11-25; *see also* Dkt. 93, Ex. 3 ("Thiry Decl."), Ex. 1.) In response, Maleski called Thiry on October 17, 2008 and they spoke for almost an hour. (Thiry Decl. at ¶ 5.) During the coversation, Maleski made negative comments about Davidson. (Thiry Dep. at 38:19-39:10; Thiry Decl. at ¶¶ 5-8.) These comments included: "[I]f Thomas Davidson is doing vision training, then he or his company is infringing on ITRAC's patent."; "Thomas Davidson [is] no longer supposed or allowed to legally be engaged in performing vision training of any kind."; and Thomas Davidson's drills "don't make sense" and "do not work for improving vision training." (*Id.*) Thiry testified that Maleski's comments did not make her think any less of Davidson, and she never told anybody else about the conversation with Maleski. (Thiry Dep. at 44:17-44:23.)

Sometime in November 2008, Michael Hill, a hitting instructor and certified trainer in Davidson's vision training method,[4] contacted Nick Sanchez, an employee of one of the

---

[3] The parties do not specify the dates of Maleski's employment or his position, and it is unclear which Schneider entity employed him. (*See* dkt. 35 at 4 ("Defendants admit that Eric Maleski is an employee of Drive Performance Wheeling, LLC[.]"); dkt 81 at 2 (" . . . Eric Maleski, a former employee of Defendant, Conditional Ocular Enhancement, Inc."); dkt. 99 at 11 (" . . . an employee of Conditional Ocular Enhancement, Inc., Eric Maleski (no longer so employed) . . .").)

[4] Hill also had wanted to buy a vision training machine from Davidson, but Davidson had not wanted to sell his machine. (Hill Dep. at 37:15-38:7.)

Schneider entities. (Dkt. 98, Ex. 2 ("Hill Dep.") at 44:16-24); Dkt. 93, Ex. 5 ("Hill Decl.") at ¶ 6.) Sanchez referred him to Maleski to further discuss iTrac's vision training capabilities. (*Id*.) Later that month, Hill called Maleski and spoke to him for ten minutes. (Hill Dep. at 45:20-46:3.) Hill told Maleski that he was interested in vision training and asked about the difference between Davidson's program and the system Maleski used. (*Id.* at 46:20-47:1.) During the conversation, Maleski made negative comments about Davidson, including these: Getting involved with Davidson's company "could potentially be a 'bad thing,' which might cause litigation and there could be adverse legal ramifications by being a part of High Tech Vision Training's program."; "[I]f [Hill] did anything as far as vision training was concerned with Thomas Davidson and High Tech Vision Training, there was a very good chance that there would be a lawsuit."; and "[Maleski's] company was the only company allowed to perform vision training" because it owned a patent that "covered all of vision training, no matter how performed." (Hill Decl. at ¶ 8; *see also* Hill Dep. at 47:6-48:19.) This was the only time Hill spoke to Maleski. (*Id*. at 46:6-10.) Hill testified that Maleski's comments did not make him think any less of Davidson and did not affect how he did business with Davidson in any way. (*Id.* at 114:20-115:3.) Hill did not tell anyone else about the conversation with Maleski. (*Id.* at 115:20-23.)

## ANALYSIS

### I. Breach of Settlement Agreement

Both parties seek summary judgment on Davidson's claim for breach of the settlement agreement. The agreement is governed by Illinois law (Settlement Agt. at ¶ 11) and is interpreted in accordance with principles of contract law. *See Leavell* v. *Dep't of Natural Res.*, 923 N.E.2d 829, 841, 397 Ill. App. 3d 937, 337 Ill. Dec. 978 (2010). The elements of a breach of

contract claim under Illinois law are "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Asset Exch. II, LLC* v. *First Choice Bank*, 953 N.E.2d 446, 455, 2011 Ill. App. (1st) 103718, 352 Ill. Dec. 207 (2011). Neither party disputes the enforceability of the settlement agreement or Davidson's performance under the settlement agreement.

Davidson requests the court enter summary judgment for him because there is no genuine issue of material fact as to the breach of the settlement agreement. Defendants assert they are entitled to summary judgment because Maleski's comments did not breach the settlement agreement and, even if they did, Davidson has failed to show any resultant injury.[5]

### A. Whether the Maleski Conversations Breached the Settlement Agreement

The settlement agreement bars Schneider and COE from "directly or indirectly, individually or in concert with others . . . mak[ing] any statement calculated or likely to have the effect of undermining, disparaging or otherwise reflecting poorly on [Davidson] . . . or in any manner detrimental to [Davidson]." (Settlement Agt. at ¶ 8.) Defendants admit that Maleski was an employee of a Schneider entity (*see* dkt. 81 at 2; dkt. 99 at 11) and do not argue that Maleski was not bound by the non-disparagement provision of the settlement agreement. Thus, the relevant inquiry is whether Maleski's comments to Thiry and Hill were likely to undermine or reflect poorly on Davidson, or were in any manner detrimental to Davidson.

---

[5] Defendants also move for summary judgment in favor of Schneider, who was sued in her individual capacity, because Davidson has made no showing that Schneider was personally involved in the conduct at issue. Although the court need not reach the issue because the breach of contract claim is dismissed against all defendants, it notes that Davidson's statement of the law is correct. *See People ex rel. Madigan* v. *Tang*, 805 N.E.2d 243, 284, 346 Ill. App. 3d 277, 281 Ill. Dec. 875 (2004) ("One of the purposes of a corporate entity is to immunize the corporate officer from individual liability on contracts entered into in the corporation's behalf . . . . Some torts for which corporate officers may be liable include . . . willfully inducing breach of contract . . . .") (internal quotation and citations omitted).

Davidson relies on Thiry and Hill's descriptions of their conversations with Maleski. Defendants do not present any evidence to dispute those descriptions. (*See* dkt 118 at ¶¶ 2-9; dkt. 119 at ¶¶ 16-19.) "When the facts are disputed, the parties must produce proper documentary evidence to support their contentions[.]" *Howland* v. *Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987). If such evidence is not rebutted, the court treats it as undisputed fact. *See, e.g., Nieves* v. *Bd. of Educ. of Chicago*, 297 F.3d 690, 692-94 (7th Cir. 2002); *Lynch* v. *Alpharma, Inc.*, No. 05 C 3065, 2006 WL 1120510, at *9 (N.D. Ill. Apr. 27, 2006). The court finds there is no genuine issue of material fact as to the content of the statements made by Maleski described in the Thiry and Hill depositions and declarations.[6]

Maleski's statements as described by Thiry and Hill clearly reflect poorly on Davidson. For example, it is self-evident that allegations that Davidson was infringing on a patent would give a listener a negative impression of Davidson, and comments that Davidson's vision training method does not work would be likely to have the effect of undermining Davidson. *See, e.g., Patlovich* v. *Rudd*, 949 F. Supp. 585, 594-95 (N.D. Ill. Nov. 20, 1996) (negative comments by physician about former employer breached non-disparagement provision of severance agreement). Thus, the undisputed facts show that Maleski's statements violated section 8 of the settlement agreement.

---

[6] Defendants object to Thiry and Hill's declarations and depositions as hearsay, citing to *Buttron* v. *Sheehan*, No. 00 C 4451, 2003 WL 21801222, at *4 (N.D. Ill. Aug. 4, 2003), for the proposition that a party cannot rely on inadmissible hearsay at the summary judgment stage. (*See* dkt. 119 at ¶¶ 16-19.) The argument fails, however, because Maleski's statements are not hearsay. The statements are not being offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c)(2); s*ee also Barner* v. *City of Harvey*, No. 98 C 3316, 1998 WL 664951, at *2 (N.D. Ill. Sept. 18, 1998) (statements introduced to show fact that statements were made and for the effect of statements on audience are not hearsay). Furthermore, Thiry and Hill's declarations and testimony do not need to be in a form that would be admissible at trial. *See Winskunas* v. *Birnbaum*, 23 F.3d 1264, 1268 (7th Cir. 1994) ("The evidence [considered on summary judgment] need not be in admissible *form* . . . . But it must be admissible in *content*, in the sense that a change in form but not in content, for example a substitution of oral testimony for a summary of that testimony in an affidavit, would make the evidence admissible at trial.") (emphasis in original) (citations omitted).

### B. Whether the Maleski Conversations Resulted in Injury to Davidson

To constitute breach of contract, Maleski's conversations with Thiry and Hill must have injured Davidson. *See TAS Distrib. Co.* v. *Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) ("Merely showing that a contract has been breached without demonstrating actual damage does not suffice, under Illinois law, to state a claim for breach of contract.").

Davidson argues that he need not show that he was injured by analogizing his breach of contract claim to either a common law claim of disparagement *per se* or a claim for unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). (*See* dkt. 94 at 7-10, 13-14; dkt. 121 at 4-7.) In addition, Davidson cites *B. Sanfield, Inc.* v. *Finlay Fine Jewelry Corp.*, 168 F.3d 967, 970-71 (7th Cir. 1999), a case about deceptive advertising under the Illinois Consumer Fraud and Deceptive Business Practices Act, for the proposition that he does not need to show he was damaged by Maleski's comments. Davidson, however, has brought a breach of contract claim, and he is required to satisfy the elements of his claim, not any other.[7]

Davidson claims that his business reputation has been irreparably damaged by Maleski's comments, and that Hill, a potential customer, will no longer do business with Davidson. Generally, damage to reputation or goodwill that results in a reduced ability to make money is an economic injury recoverable in a breach of contract action. *See Yockey* v. *Horn*, 880 F.2d 945, 953 (7th Cir. 1989); *see also Sorkin* v. *Blackman, Kallick & Co.*, 540 N.E.2d 999, 1003, 184 Ill. App. 2d 873, 133 Ill. Dec. 133 (1989).

Defendants do not dispute that both Thiry and Hill were interested in the industry in which Davidson worked and were active in baseball and softball coaching. Defendants argue,

---

[7] Davidson's argument also fails in substance. "[A]lthough the Illinois Attorney General can file suit [under the Illinois Consumer Fraud and Deceptive Business Practices Act] in an effort to stop deceptive advertising without having to prove that anyone has actually been injured, the private plaintiff must establish an injury attributable to the statutory violation. Comparable proof is required in order to recover under the Lanham Act." *Sanfield*, 168 F.3d at 975.

however, that Davidson was not injured because (1) neither Thiry nor Hill was a prospective customer; (2) Maleski's comments to Thiry and Hill did not make them think less of Davidson; and (3) they did not relate Maleski's negative comments about Davidson to others.

Both Thiry and Hill confirmed that their conversations with Maleski did not make them think worse of Davidson and that they did not relate the comments to others. (*See* Thiry Dep. at 44; Hill Dep. at 114-15.) Nevertheless, Davidson cites two exchanges from Hill's deposition to support the argument that he was injured. First, Hill testified, "[Maleski] said that if I did pursue the vision training, I could possibly be open to litigation. It wasn't a good idea to do, to get involved. That was good enough for me." (*Id*. at 47.) In addition, there was the following exchange:

> Q. To your knowledge, did your conversation with [Maleski] cost any loss of business or income to Tom Davidson?
>
> A. Hypothetically, it could have.
>
> Q. But I'm asking you in actuality. In actuality, did your conversation with Eric cause any actual loss of business or income to –
>
> A. I don't know.
>
> Q. Are you aware of any?
>
> A. I'm not aware.

(*Id*. at 115.) This testimony does not prove that Davidson was injured by his conversation with Maleski, especially when viewed in the light of Hill's testimony that the conversation with Maleski did not affect how he did business with Davidson in any way. (*Id*.) In addition, in his deposition, Davidson was not able to point to any injury he suffered due to statements by defendants. (*See* dkt. 98, Ex. 1("Davidson Dep.") at 178:12-20, 205:17-25.)

Davidson's inability to show any injury is fatal to his breach of contract claim.[8] *See, e.g., TAS Distrib.*, 491 F.3d at 631-37 (affirming dismissal of breach of contract claim on summary judgment where plaintiff failed to demonstrate it could prove lost profit damages); *Transp. & Transit Assocs., Inc.* v. *Morrison Knudsen Corp.*, 255 F.3d 397, 401 (7th Cir. 2001) (where plaintiff cannot establish damages for breach of contract, "[t]here is no point in litigating a case . . . so the district court was right to grant summary judgment to [defendant]"); *U.S. Gypsum Co.* v. *LaFarge N. Am., Inc.*, 508 F. Supp. 2d 601, 638-39 (N.D. Ill. 2007) (where plaintiff produces no evidence of damages resulting from the breach of its former employees' confidentiality agreements, breach of contract claim does not survive summary judgment). Defendants' motion for summary judgment on Davidson's breach of contract claim is granted.

## II. Tortious Interference with Prospective Economic Advantage

Both parties seek summary judgment on Davidson's claim for tortious interference with prospective economic advantage. To succeed in an action for tortious interference with prospective economic advantage under Illinois law, the plaintiff must prove: "(1) a reasonable expectation of entering a valid business relationship; (2) the defendant's knowledge of the expectation; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damage to the plaintiff

---

[8] Davidson's request for specific performance of defendants' obligations under the settlement agreement does not save his breach of contract claim. "Specific performance is an exceptional remedy and is normally available only when damages constitute an inadequate remedy." *TAS Distrib.*, 491 F.3d at 637 (citations omitted). In addition, it is appropriate only when the terms of the contract are sufficiently specific to allow the precise drafting of an order for specific performance. *Id.* In this case, Davidson has not shown that money damages for breach of the non-disparagement provision would be an inadequate remedy. He simply has failed to show any damage. Furthermore, ordering defendants to comply with the non-disparagement provision would require "the kind of ongoing supervision that strains judicial resources." *Id.* (citing *New Park Forest Assocs. II* v. *Rogers Enters., Inc.*, 552 N.E.2d 1215, 1218, 195 Ill. App. 3d 757, 142 Ill. Dec. 474 (1990)). Davidson's request for specific performance is thus denied.

resulting from the defendant's interference." *Atanus* v. *Am. Airlines, Inc.*, 932 N.E.2d 1044, 1048, 403 Ill. App. 3d 549, 342 Ill. Dec. 583 (2010) (citing *Dowd & Dowd, Ltd.* v. *Gleason*, 693 N.E.2d 358, 370, 181 Ill. 2d 460, 230 Ill. Dec. 229 (1998); *Anderson* v. *Vanden Dorpel*, 667 N.E.2d 1296, 1299, 172 Ill. 2d 399, 217 Ill. Dec. 720 (1996)).

Davidson argues generally that he has "a reasonable expectation in entering into valid business relationships in the vision training business marketplace." (Dkt. 108 at 14.) In order to satisfy the first element of his claim, however, Davidson must establish the existence of a reasonable expectancy of a specific economic advantage with either Thiry or Hill. *See Grund* v. *Donegan*, 700 N.E.2d 157, 161, 29 Ill. App. 3d 1034, 233 Ill. Dec. 56 (1998) (tortious action by defendant must be directed towards party with whom the plaintiff expects to do business).

Davidson also claims that although he refused to sell Hill a vision training machine, he might have engaged in other vision training business with Hill absent Maleski's comments. (*See* dkt. 108 at 10.) Davidson does not point to any specific business arrangements that were proposed between Davidson and Hill. Courts have declined to find reasonable expectancy in cases where the possibility of an economic advantage is significantly more concrete than that claimed by Davidson. For example, in *MPC Containment Systems, Ltd.* v. *Moreland*, No. 05 C 6973, 2008 WL 2875007, at \*\*15-16 (N.D. Ill. July 23, 2008), the court dismissed the plaintiff's claim because it could not establish that it reasonably expected to be the main supplier of tanks for the Air Force even though it had a long-standing relationship with the Air Force and submitted a bid for additional tanks. *Id.* Davidson's "mere hope" of additional business with Hill does not constitute a reasonable expectancy. *Id.*

Viewing the facts in the light most favorable to Davidson and making inferences in his favor, Davidson has cited no evidence that he had a reasonable expectancy of economic

advantage from Thiry or Hill. Furthermore, Davidson testified that he was not aware of any business opportunities that were lost because of defendants' actions. (*See* Davidson Dep. at 178:12-20, 205:17-25.) Because Davidson cannot prove the first element of a claim for tortious interference with prospective economic advantage, the court grants summary judgment in the defendants' favor.

## **CONCLUSION**

For the foregoing reasons, summary judgment is granted in favor of the defendants on all counts. This case is terminated.


Date:   February 20, 2014

_____
U.S. District Judge Joan H. Lefkow